**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GREGORY C. GRAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10 C 1670** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Gregory Gray seeks review of the Commissioner of Social Security's decision denying his application for Supplemental Security Income (SSI). Gray has moved for summary judgment, asking the Court to reverse and remand for further consideration. In response, the Commissioner seeks a judgment affirming the denial of benefits. For the reasons stated below, the Court grants Gray's motion and remands the case for further proceedings consistent with this decision.

### Background

Gray is a fifty-one year old man with a general equivalency diploma (GED) and some vocational training. He has not worked in any capacity since June 2007, though he received a forklift operator certificate in May 2008 after completing job training. From March 2007 until June 2007, Gray was employed on a temporary basis as an assembly line worker. Before that, he worked in the roofing and shipping industries.

Gray applied for SSI on August 21, 2006. He sought benefits based on a

disability that he claimed began on August 1, 2006.  The Social Security Administration (SSA) denied his claim initially on October 24, 2006 and again upon reconsideration on January 4, 2007.

Gray then filed a written request for a hearing before an administrative law judge (ALJ) on March 5, 2007.  The hearing was held on January 15, 2009 in Chicago.  At the hearing, Gray amended the alleged onset date of his disability to July 1, 2007 in light of his employment through June of that year.  Gray was represented by counsel.  He testified, as did vocational expert (VE) Richard Hammersma.  On February 25, 2009, the ALJ determined that Gray was not disabled and denied his claim for benefits.

Gray retained a new attorney and sought review by the SSA's Appeals Council. He also submitted additional medical records that were not part of the record at the time of his hearing before the ALJ.  The Appeals Council denied Gray's request for review on January 21, 2010.

**1.      Summary of medical evidence**

The hearing record consists mostly of records from sporadic emergency room visits, reports from physicians who examined Gray's medical records, and occasional notes from treating physicians.  This section summarizes the record chronologically.

In September 2006, Dr. Scott Kale performed an internal medicine consultative evaluation of Gray for the SSA.  Dr. Kale's cardiac, abdominal, musculoskeletal, neurologic and mental examinations of Gray were normal, but a pulmonary function test revealed moderately severe obstruction with significant improvement following bronchodilator treatment.  Dr. Kale's clinical impression was that Gray had a history of chronic obstructive pulmonary disease (COPD) and asthma.

2

In October 2006, Dr. Frank Jimenez reviewed Gray's medical records and completed a written physical residual functionality assessment of Gray for the SSA. In assessing Gray's ability to work, Dr. Jimenez concluded that Gray would have no exertional limitations but would need to avoid concentrated exposure to fumes, dusts and other respiratory irritants. In December 2006, Dr. Henry S. Bernet reviewed Gray's medical records and affirmed Dr. Jimenez's assessment.

In late 2006, Gray visited hospitals on several occasions with various medical problems. In August, he went to Provident Hospital with coughing and was diagnosed with bronchitis and exacerbation of COPD. In October, he went to Provident Hospital with a toothache and jaw swelling. He also underwent pulmonary function testing at Stroger Hospital, which showed a moderate obstructive ventilatory defect. In November, he again went to Provident Hospital, this time with back pain.

In May 2007, Gray received treatment at Provident Hospital for left shoulder pain after reportedly lifting boxes weighing thirty to forty pounds. The records from this visit contain diagnoses of tendonitis and degenerative joint disease, in addition to COPD, asthma, and emphysema. Additional records dating between August 2007 and October 2008 reflect treatment for COPD, asthma, and other complaints. These records also reveal that Gray continued abusing drugs and smoking cigarettes while receiving treatment.

Records from November 2007 show that Gray reported being hyperenergetic and hyperactive throughout his life. They also note the doctor's clinical impression of "ADHD [attention deficit hyperactivity disorder] vs. BPD [bipolar disorder]." R. 276. Gray was referred for mental health treatment and prescribed Lorazepam as needed for

one month.  Records from May 2008 indicate that Gray had seen a psychiatrist and was taking Prozac and Trazodone but was otherwise feeling well.

In June 2008, Gray saw physicians at Provident Hospital and complained of right shoulder pain and a left wrist ganglion.  He was referred to the orthopedics department and prescribed Ibuprofen.  Other records show that both of these conditions persisted until at least October 2008.  Finally, in October 2008 Gray's treating physician, Dr. Maryam Sanati, completed an "Illinois Department on Aging" form on which she indicated, without explanation, that Gray became disabled in July 2008 as a result of asthma and bipolar disorder.

## 2.    Administrative hearing

At the outset of the hearing, Gray's attorney gave an opening statement briefly discussing Gray's medical and work history.  Counsel also stated that Gray's medical records contained no notes indicating psychiatric treatment and that counsel had unsuccessfully sought additional records from Cook County.

Gray testified about his work history, daily activities, and the severity of his physical and mental impairments.  Gray lives in the basement of his mother's home and spends most of his time there but goes upstairs for meals and to bathe.  He helps with minor chores around the house, such as shoveling snow off of the front stairs of the house.  He does not go grocery shopping but sometimes shops for personal items.  When he goes out, he uses public transportation.  In his spare time, Gray reads and watches television, but in the past he has also volunteered at a local church and an organization that helps ex-offenders obtain jobs.  Gray has a long history of heroin and cocaine use and served time in prison, but he testified that his last drug use was four or

five months before the hearing.  He smokes a few cigarettes per day and only drinks alcohol socially.

The ALJ asked Gray how his various impairments affect his daily life.  Gray stated that his respiratory problems cause him to lose his breath late in the day.  He testified that he has arthritis in his shoulder but admitted to missing an appointment for physical therapy.  He has difficulty sleeping through the night and wakes up frequently unless he takes sleeping pills.  Gray's asthma requires him to take various medications, but he occasionally does not use the inhalers because they taste bad.  Gray also testified that his psychiatric problems—depression, anxiety, and bipolar disorder—require him to take several different medications and sometimes lead to "bad days" on which he doesn't feel like living.

The ALJ also questioned Gray about his exertional abilities.  Gray testified that he can walk at a comfortable pace for a block or so; occasionally stand for half an hour; sit for one to two hours without standing up; lift twenty-five pounds regularly and up to fifty pounds occasionally; and climb a flight of stairs without stopping.  Gray said he thought he could work as a forklift operator but he could not find such a job.  He also testified that he could only work for about the first half of any given month because he becomes fatigued from continuous effort.

Vocational expert Richard Hammersma testified after Gray.  Hammersma recounted Gray's work history and opined that Gray's limited education and work experience would not permit direct entry into skilled work.  The ALJ asked Hammersma whether a hypothetical person of Gray's age, education, and work experience could perform Gray's past jobs if the person had the following functional capacity:  lifting and

carrying twenty-five pounds frequently and fifty pounds occasionally; sitting or standing

and walking for six hours; unlimited pushing/pulling; occasional stairs and ramps; no use

of ladders; and no concentrated exposure to airborne pollutants, hazardous machinery

or unprotected heights.  Hammersma testified that such a person could perform Gray's

past work.  The ALJ then presented three similar hypothetical questions based on the

same limitations, but incorporating lower exertional limitations and routine, repetitive

tasks and occasional interactions with others.  Hammersma testified that these

hypothetical individuals could also perform Gray's past work.  Hammersma identified

several thousand jobs in the regional economy that the various hypothetical individuals

could perform.

At the close of the hearing, the ALJ asked Gray's attorney whether the record

was complete.  The ALJ did not inquire about the records that counsel said he had

unsuccessfully requested from Cook County.  Gray's attorney responded that, aside

from future records from an upcoming pulmonary function test, he believed the record to

be complete.  The ALJ then closed the record and concluded the hearing.

**3.    ALJ's decision**

On February 25, 2009, the ALJ issued a written decision denying Gray's claim for

benefits.  She applied the five-step sequential process outlined in the Social Security

regulations for determining a claimant's disability status.  *See* 20 C.F.R. § 416.920(a).

In doing so, she made the following determinations:

Step one:  Gray has not engaged in any substantial gainful activity since July 1,

2007, the alleged onset date of his disability.

Step two:  Gray has a combination of severe medically determinable impairments

consisting of chronic obstructive pulmonary disease, emphysema, chronic severe asthma, right shoulder capsulitis, heroin and cocaine abuse, and alcohol abuse.

Step three:  Gray's combined impairments do not meet or medically equal any of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ stated that Gray's mental impairment is non-severe in part because "[t]he earliest date for anti-depressant and anti-anxiety medications, Trazadone [sic] and Fluoxetine, is August 29, 2008" and therefore this impairment "would have been established less than twelve months prior to this decision."  R. 15.

Residual functional capacity:  Gray has sufficient residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R. § 416.967(c), with the following capabilities and limitations:

- Lift/carry fifty pounds occasionally and twenty-five pounds frequently;

- Sit six hours and stand or walk six hours over the course of an eight-hour work day;

- Push and pull with no limits;

- Occasionally climb stairs and ramps but not ladders;

- Perform simple routine repetitive tasks with occasional interaction with co-workers and the general public;

- Avoid concentrated exposure to airborne pollutants, hazardous machinery, and unprotected heights;

- Stay off task ten percent of the day in addition to normal breaks; and

●        Absent from work one to two days per month.

Step four:  Given his RFC, Gray is capable of performing past relevant work as a

shipping/mailing clerk and temporary assembler, and as such he is not disabled.

R. 13-17.  Gray filed his appeal in this Court on March 15, 2010.

**Discussion**

When the Appeals Council denies review of an ALJ's decision, that decision

becomes the final decision of the Commissioner.  *Liskowitz v. Astrue*, 559 F.3d 736,

739 (7th Cir. 2009).  The Court will affirm the ALJ's ruling "if it is supported by

substantial evidence and is free of legal error."  *Steele v. Barnhart*, 290 F.3d 936, 940

(7th Cir. 2002); 42 U.S.C. § 405(g).  Substantial evidence means evidence that "a

reasonable mind might accept as adequate to support a conclusion.'"  *Clifford v. Apfel*,

227 F.3d 863, 869 (7th Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401

(1971)).  An ALJ is required to "build a logical bridge from the evidence to his

conclusion," *Steele*, 290 F.3d at 941, and accordingly the Court will not uphold the ALJ's

decision if "it lacks evidentiary support or an adequate discussion of the issues."  *Lopez*

*ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotation marks

omitted).

Gray argues that remand is required because the ALJ failed to adequately

develop the record upon which her decision was based.  The Court agrees.  "While a

claimant bears the burden of proving disability, the ALJ in a Social Security hearing has

a duty to develop a full and fair record."  *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir.

2009).  To fulfill this duty, an ALJ must "make a 'reasonable effort' to ensure that the

claimant's record contains, at a minimum, enough information to assess the claimant's

8

RFC and to make a disability determination." *Martin v. Astrue*, 345 Fed. Appx. 197, 201 (7th Cir. 2009). An ALJ's failure to do so is "good cause to remand for gathering of additional evidence," *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (internal quotation marks omitted), so long as the claimant also shows he was prejudiced by the failure. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

Before the hearing, the ALJ sent Gray a December 1, 2008 form letter telling him that "[i]f there is more evidence you want to submit, get it to me right away." R. 96. At the hearing, the ALJ initially noted that she was unable to "find any psychiatric treatment notes in the file." R. 22. Gray's attorney told the ALJ that he requested records from doctors employed by Cook County but "didn't receive a response." R. 25. Gray later testified that he had "plenty of visits" with a doctor for psychiatric treatment. R. 47. The ALJ was thus on notice that potentially significant medical records might be missing from the file. Despite this, the ALJ did not inquire further about Gray's counsel's request for records or try to obtain the missing records on her own. Instead, she simply asked Gray's counsel at the close of the hearing whether the record was complete. R. 70. Inexplicably, Gray's counsel told her that it was, with the exception of records from an upcoming test. R. 70-71. With no further inquiry, the ALJ declared the record closed. R. 71. Four months later, Gray's new attorney sent the Appeals Council additional records of Gray's psychiatric treatment between February and November 2008, confirming that a gap existed in the record at the time of the hearing. *See* R. 205-16.

"[A] claimant represented by counsel is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). This presumption does not, however, eliminate an ALJ's independent duty to reasonably

develop the record. *See Nelms*, 553 F.3d at 1098 (noting that an ALJ's duty in this regard is merely "enhanced when a claimant appears without counsel"). The ALJ was presented with clear signs that the record was incomplete, but she failed to act. *Cf. id*. at 1099 (finding that ALJ failed to adequately develop the record because he "was aware that [petitioner] was still receiving treatment," but nevertheless failed to "gather *any* medical evidence to fill the two year gap in the record") (emphasis in original).

The ALJ's failure to develop the record prejudiced Gray in at least three ways. First, it distorted the basis for the ALJ's step three findings. The ALJ concluded at step three that Gray's mental impairments were not severe and did not render him disabled at step three because "[t]here is no evidence of a confirmed diagnosis, or a mental status evaluation or progress notes from a treating source." R. 15. Had the ALJ fulfilled her duty to develop the record, she likely would have obtained the missing records of Gray's psychiatric treatment between February and November 2008 (or earlier records if any existed), which contain psychiatric progress notes from treating sources. *See* R. 208-16. The records would tend to undercut the ALJ's step three conclusion that Gray's mental impairment was "based essentially on history reported by [Gray]." R. 15.

Second, the incompleteness of the record prejudiced Gray by altering the basis on which the ALJ determined his RFC. In making her RFC determination, the ALJ gave "very little weight" to Dr. Sanati's October 2008 opinion that Gray became disabled in July 2008 partly due to bipolar disorder. R. 17. The ALJ did so because Dr. Sanati's opinion was "not supported by any additional treatment evidence" and contained no "functional analysis or basis for its diagnoses or conclusory statement." *Id.* As noted above, however, the newly-found records contain considerable detail about Gray's

10

psychiatric treatment throughout 2008. Had the ALJ developed the record and obtained these materials, she may have been required to give greater weight to Dr. Sanati's opinion.

Finally, the gaps in the record may have contributed to other erroneous or potentially erroneous factual findings in the ALJ's decision. For example, the ALJ noted in her step three findings that "[t]he earliest date for anti-depressant and anti-anxiety medications, Trazodone and Fluoxetine, is August 29, 2008." *Id.* However, Gray was prescribed Lorazepam, an anti-anxiety medication, in November 2007. R. 276. The missing records also reveal that Gray reported anxiety and mood swings in February 2008. R. 214. He was prescribed Prozac and Trazodone in April 2008, Lorazepam, Trazodone, and Prozac in June 2008, and Seroquel, Trazodone, Lorazepam, Depakote and Fluoxetine in November 2008. R. 208-13. The records thus reveal as incorrect the ALJ's belief that Gray's anti-anxiety treatment began in late August 2008. To the contrary, they suggest that Gray was continuously seeking and receiving treatment for his mental impairments beginning in at least November 2007. Because the ALJ did not know have this information, her ability to accurately "assess the claimant's RFC and to make a disability determination" was diminished. *Martin,* 345 Fed. Appx. at 201.

The Court also notes that Gray's medications–at least toward the end of the period–and certain other symptoms he described are quite consistent with a diagnosis of bipolar disorder. If Gray actually has bipolar disorder, it can be (though it is not always) a disabling condition or can at least contribute to a disability. It is extraordinarily rare for a person to develop bipolar disorder in his late 40's or early 50's; it is far more likely that if Gray has this disorder, he has had it for decades. Thus if the tentative

diagnosis of bipolar disorder is correct, the odds of a 2008 onset date, which is what the ALJ assumed based on what she was given, are actually quite slim.

The Court also notes that although it concludes the ALJ did not develop the record as required, the blame for this falls partly on the attorney who represented Gray at the hearing (a different attorney from the one who represents him now). On remand, Gray's current counsel would be well advised to focus her efforts on, among other things, ensuring the ALJ has a complete and thorough picture of Gray's mental health history, current status, and its effect on his ability to work.

Gray also argues that (1) the ALJ's RFC findings contained improper lay opinion unsupported by medical evidence, and (2) the ALJ's finding that Gray's mental impairments are non-severe was not supported by substantial evidence. Pl.'s Br. 12-15. Because the Court is remanding the case based on the ALJ's failure to adequately develop the record, it need not address the merits of these arguments.

On remand, the ALJ should assess plaintiff's disability status and (if necessary) his RFC based on all of the evidence of record, including any materials provided by Gray's counsel.

## Conclusion

For the reasons stated above, the Court grants Gray's motion for summary judgment [docket no. 20]. The Court directs the Clerk to enter judgment remanding the case to the Social Security Administration for further proceedings consistent with this decision.

Date: January 28, 2011

MATTHEW F. KENNELLY
United States District Judge